```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS
```

UNITED STATES of AMERICA,

    v.                           Case No. 1:19-cr-10308 ADB

DANTE MIRABELLA,
      Defendant.

DEFENDANT'S SENTENCING MEMORANDUM<br>
(WITH REQUEST FOR JUDICIAL RECOMMENDATION FOR MAT)

Preliminary

Defendant, Dante Mirabella, by his counsel, Kevin L. Barron, Esq., respectfully offers this memorandum in aid of defendant's sentencing at 11:00 AM on Monday, May 2, 2022. Defendant requests a sentence of 88 months, the bottom of the 88-to-96 month range under the proposed revised "C" plea agreement. Defendant's Total Offense Level is 17 with a consecutive term of the seven years for conviction on count II of the Indictment (Doc. 1, p. 3) under 18 USC §924(c)(1)(ii). PSR ¶¶ 32. His three scoreable criminal history points make him Criminal History Category II. PSR ¶ 46. Bottom of Guidelines Sentence Range is therefore 111 months. PSR ¶ 98.

Proposed Revised Plea Agreement

Probation's offense level computation (PSR, pp. 6 - 7) is five levels lower than the parties' September 24, 2021 plea agreement (Doc. 87) because the parties failed to follow note 4 to USSG § 2K2.4. Accordingly, counsel for the parties have

agreed to recommend an amended "C" plea agreement with revised offense level calculations and a range of 88 to 96 months instead of 96 months.  (The revised plea agreement has been mailed to defendant for approval and may be handed up at sentencing after signature.)  USSG § 2K2.4, note 4 states that any specific offense characteristic such as possession, brandishing, use or discharge of a firearm, cannot be applied to the Guideline for the underlying offense where 924(c) has been charged.  Discussed, PSR ¶ 22.

### Judicial Recommendation for MAT

Defendant requests a judicial recommendation for MAT at Bureau of Prisons, based on the January 5, 2022 letter of Robert Welch, MD.  Under the First Step Act "the term 'residential substance abuse treatment' . . . may include the use of pharmocotherapies, where appropriate, that may extend beyond the 6-month period" of RDAP.  See 18 USC §§3621(e) [Substance Abuse Treatment] and 3621(e)(5)(A) [Definitions].

### ARGUMENT

A sentence of 88 months is not greater than necessary to serve the purposes of the Sentencing Reform Act of 1984.  Mr. Mirabella will be about 62 years old on release,[1] an age at which the statistical risk of reoffense diminishes.  Moreover, statistical evidence shows that Mr. Mirabella's addiction - a

---

[1] FSA good time credit is not available to defendants serving a sentence for a 924(c) conviction.

strong contributing factor to offense conduct - can be controlled with medication assisted treatment ("MAT"). (Essentially, MAT is open-ended long-term prescription of Buprenorphine, Naltrexone or Methadone with clinical supervision.)

A.   Reduced Risk of Recidivism

Mr. Mirabella is almost 57 years old.  He will be 62 upon release, an age at which United States Sentencing Commission studies have found a greatly reduced risk of recidivism.  The Commission, however, has not fully and adequately considered the sentencing of offenders who will be released after age 60 because the Guidelines make no adjustment for the imposition of a long sentence on a prisoner who has already passed midlife. In spite of the Commission's own long-term recidivism studies, offense level and criminal history category remain the same for an offender aged 20 as they are for an offender aged 50.

Few statistics are so closely related and show as clear a correlation as age and recidivism:

> The pattern is consistent across age groups, as age increases recidivism by any measure declined.  Older offenders who do recidivate, do so later in the follow up period [nine years] do so less frequently and had less serious recidivism offenses on average.

See, Hunt & Easly, "The Effects of Aging on Recidivism Among Federal Offenders", United States Sentencing Commission, December 2017, p. 30.  Offenders of all Criminal History

Categories released after age 65 had a re arrest rate of 13.4% and a reincarceration rate of 4.1%. Id.

The Commission's studies showing defendant's low risk of reoffense are entitled to considerable weight. The Commission undertook recidivism studies shortly after passage of the Sentencing Reform Act of 1984 with a view to three important purposes of federal sentencing, deterrence, incapacitation and rehabilitation. Id. at 2. This most recent 2017 study used a much larger group of subject offenders and allowed for data analysis across different subgroups and examined the impact of the aging process on federal offender recidivism and, once age is accounted for, the impact of other offense and offender characteristics.

B.   MAT for Addiction

The Bureau of Prisons has produced a 42-page publication summarizing received medical opinion on MAT. OPIOID USE DISORDER: DIAGNOSIS, EVALUATION, AND TREATMENT, Federal Bureau of Prisons Clinical Guidance, August 2021. It contains a list of the benefits of administering such a program at BOP.

> Benefits of Medications for OUD: Studies show that medications for OUD reduce drug use, disease rates, and overdose events and increases retention in treatment programs while promoting recovery among individuals with OUD, according to studies. Benefits of treatment include:
>
> - Reduced risk of overdose-related deaths
> - Reduced risk of HIV and viral hepatitis infections in injection drug users

- Lower rates of cellulitis for injection drug users
- *Reduced criminal behavior in the community*
- Reduced rates of psychiatric complications in the community

Id. [emphasis added]

There is consensus in the medical literature that effective treatment of opiate addiction requires consistent and long-term treatment:

> Long-term approaches to the treatment of opiate addiction are required because of persistent alterations in dopaminergic, opioidergic, and stress responsive pathways. Human imaging studies have identified ongoing reductions in dopamine D2 receptor binding potential in opiate addicts and that this reduction correlates with the duration of opiate use. Animal models of opiate addiction and postmortem studies in human opiate addicts have identified alterations in opioid gene expression in specific brain areas related to reward and behavior. Finally, stress response is exaggerated in former heroin addicts who are not taking methadone pharmacotherapy. While pharmacotherapy (that is, MAT) may not correct alterations in dopamine receptor availability and opioid gene expression, it does appear to normalize several aspects of stress responsiveness."

Bart, G., "Maintenance Medication for Opiate Addiction: the Foundation of Recovery", Journal of Addictive Diseases. 2012 Jul; 31 (3): 207 – 225, p 209.

The same study also found that buprenorphine response is dose related, with most patients stabilizing at doses between 12 mg and 16 mg a day, and noted that when adequate doses are used, treatment outcome in terms of retention and reduction in illicit opiate use is similar to that of methadone maintenance. (Bart,

p. 214). *This study also found that the best outcomes were in clients who were maintained indefinitely on buprenorphine maintenance, noting that "during maintenance treatment, patients have reduced illicit opiate use but following buprenorphine taper (that is, after the buprenorphine is discontinued), more than 90% of patients return to illicit opiate use." (p.215).*

Mr. Mirabella's booking photos from his May 29, 2019 arrest in this case showed him gaunt and ravaged by use of cocaine and heroin. The is no reasonable argument that controlling Mr. Mirabella's disorder will reduce risk of reoffense. Dr. Welch's diagnosis is a clear finding of Opioid Use Disorder and prescribes MAT for the clinical reasons described.

## CONCLUSION

For the reasons set forth above, the Court should sentence Mr. Mirabella to 88 months of imprisonment and make judicial recommendation for MAT during such confinement.

Dated: April 27, 2022

Respectfully submitted,
Dante Mirabella, defendant,
By his counsel,
/s/Kevin L. Barron
Kevin L. Barron, Esq.
50 Congress St. - Ste. 600
Boston, MA 02109-4075
(617) 407-6837

Certificate of Service

    Counsel certifies that he has caused a true copy of this document to be served today on all counsel for the parties through the CM/ECF system of this District as set forth in the Notice of Electronic Filing and that no party requires service by other means.

<u>/s/Kevin L. Barron</u>